**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 14, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

BRENDA EVERS ANDREW,

    Petitioner - Appellant,

v.

SCOTT TINSLEY, Warden, Mabel Bassett
Correctional Center,

    Respondent - Appellee.

-------------------------------

FAIR TRIAL ANALYSIS, LLC, et al.,

    Amicus Curiae.

No. 15-6190
(D.C. No. 5:08-CV-00832-R)
(W.D. Okla.)

_____

**ORDER**
_____

Before **HOLMES**, Chief Judge, **HARTZ**, **TYMKOVICH**, **MATHESON**, **BACHARACH**, **PHILLIPS**, **McHUGH**, **MORITZ**, **EID**, **CARSON**, and **FEDERICO**, Circuit Judges.[*]
_____

    This matter is before the court Appellant's *Petition for Panel Rehearing and Rehearing En Banc*, and Appellee's *Response to Petitioner's Petition for Rehearing.*

Upon careful consideration of the petition and the response, we direct as follows.

---

[*] The Honorable Veronica S. Rossman is recused in this matter.

The pending motions for leave to file amicus briefs are GRANTED. All amicus briefs submitted in connection with the court's consideration of whether to grant en banc rehearing will be filed as of the date they were submitted.

Appellant's request for panel rehearing is DENIED.

The petition and response were transmitted to all non-recused judges of the court who are in regular active service, and a poll was called. The poll did not carry. Consequently, Appellant's request for en banc rehearing is DENIED.

Judge Federico voted to grant en banc rehearing and has filed a separate dissent from the denial of en banc rehearing.

Entered for the Court,


Per Curiam

No. 15-6190, *Andrew v. Tinsley*
**FEDERICO**, Circuit Judge, dissenting from the denial of rehearing en banc.

"[W]hen evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice,'" the Constitution "impose[s] a constraint tied to the Due Process Clause." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). The Supreme Court reaffirmed this principle last year when it granted certiorari in this very case: the "mistaken admission of irrelevant evidence" can be so "'unduly prejudicial' as to render [a] trial 'fundamentally unfair.'" *Andrew v. White*, 604 U.S. 86, 96 (2025) (per curiam) (*Andrew III*). On remand, the Supreme Court tasked this court to apply this principle against the extreme record in this case. Because I disagree with how the panel resolved this appeal following the remand, I vote to grant the petition and rehear this case before the en banc court.

After Oklahoma introduced a swell of evidence (ranging from testimony about her appearance to the physical underwear she wore on vacation) to advance a sex-based stereotype of Andrew's character, the jury convicted her of murder and sentenced her to death. This court then rejected Andrew's claim and held that clearly established federal law precluded her challenge to the admission of irrelevant and prejudicial evidence. Now, this court holds that

1

Andrew's appeal must fail because she has not demonstrated that the challenged evidence "concern[ed] the central jury issues" at trial. *Andrew v. Tinsley*, 164 F.4th 789, 801 (10th Cir. 2026) (*Andrew IV*). But this test turns the constitutional principle on its head.

I will first very briefly address the factual and procedural background of this case; then discuss the merits of Andrew's petition for rehearing; and then conclude by explaining why the issues in this case rank, in my view, as exceptionally important within the meaning of our local rules for rehearing en banc.

## I

To recite the facts is to state the fundamental unfairness of the trial that sent Andrew to death row. They are well-trodden by judges up and down the state and federal court systems who have considered this case, so I will be very brief in summarizing the factual and procedural history. These are snippets from the state's evidence:

- "She came into the store and just had been shopping there regularly for a while and then just, she started kinda flirting with me, coming in dressed sexy." State R. II at 84 (testimony of James Higgins).

- "[Prosecutor's Question:] When you say she was dressing sexy can you describe the attire that she would wear when she came into the store? [Higgins' Answer:] Like short skirt, low-cut tops, just sexy outfits, provocative." State R. II at 84–85.

- "Does a good mother invite her boyfriends over to the house with the children in the home when they're still married to their father?" State R. II at 258 (prosecutor's question on redirect examination of Higgins).

- "She wasn't wearing attire that I would consider appropriate for running errands." State R. II at 181 (testimony of Jennifer Jones).

- "[Prosecutor's Question:] How did she appear to you? [David Ostrowe's Answer:] Well, as we were sitting at the bar waiting for them to come the comment that was made was who is the hoochie." State R. II at 161.

- "[Prosecutor's Question:] Anything in particular that you can tell me about her appearance that was surprising to you? [Ostrowe's Answer] Uhm, her dress was very tight, very short with a lot of cleavage she exposed." State R. II at 161.

There was so much more. And these were not stray comments elicited in the heat of trial; they were part of a trial strategy to draw the jury's attention to Andrew's concededly irrelevant but, the state argued, unwomanly and unmotherly behavior. In its opening statement, Oklahoma promised evidence of Andrew's "extracurricular activities." State R. I at 13. And in closing, Oklahoma held aloft the underwear of the accused and stated: "The grieving widow packs this to run off with her boyfriend. The grieving widow packs this to go sleep in a hotel room with her children and her boyfriend. The grieving widow packs this in her appropriate act of grief." State R. XVII at 249. According to the trial judge, evidence of this kind was allowed into evidence "only as it relate[d] to her ability to manipulate men." State R. XII at 227.

3

Altogether, Oklahoma put forward a scene at trial that would make Nathaniel

Hawthorne blush. Or as one of my colleagues put it:

> The State focused from start to finish on Ms. Andrew's sex life.
> This focus portrayed Ms. Andrew as a scarlet woman, a modern
> Jezebel, sparking distrust based on her loose morals. The
> drumbeat on Ms. Andrew's sex life continued in closing argument,
> plucking away any realistic chance that the jury would seriously
> consider her version of events.

*Andrew v. White*, 62 F.4th 1299, 1336 (10th Cir. 2023) (*Andrew II*) (Bacharach,

J., dissenting).

The Oklahoma Court of Criminal Appeals acknowledged the same. On

direct appeal, the three-judge majority wrote: "This Court is struggling to find

any relevance to this evidence, other than to show Appellant's character. The

State agrees that most of this evidence was irrelevant to any issue in this case;

however, even so, the introduction of this evidence was harmless due to the

overwhelming evidence in this case." *Andrew v. State*, 164 P.3d 176, 192 (Okla.

Crim. App. 2007) (*Andrew I*). Judge Johnson dissented in part, as he could not

agree that the "jury was unaffected by that evidence in deciding whether this

defendant should live or die," *id.* at 207, and Judge Chapel would have reversed

both Andrew's conviction and her sentence, *id.* at 208.

After she sought federal habeas review, the district court denied Andrew

relief. *Andrew v. Moham*, 2015 WL 5254525 (W.D. Okla. Sept. 9, 2015). This

court affirmed. Andrew argued that the Supreme Court's decision in *Payne v.*

4

*Tennessee*, 501 U.S. 808 (1991), established a rule of due process precluding the admission of irrelevant and prejudicial evidence in at least some cases. *Andrew II*, 62 F.4th at 1314. Unpersuaded, this court initially held "*Payne* is not 'clearly established law' that establishes a due-process violation arising from ordinary evidentiary rulings at trial." *Id.* at 1315.

The Supreme Court reversed. "By the time of Andrew's trial, this Court had made clear that when 'evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief.'" *Andrew III*, 604 U.S. at 87 (quoting *Payne*, 501 U.S. at 825). The Supreme Court left to us on remand the task of deciding whether, in light of this clearly established federal law, the Oklahoma Court of Criminal Appeals unreasonably applied that law in Andrew's case, sufficient to warrant relief under 28 U.S.C. 2254(d)(1). "Specifically, the question now is whether a fairminded jurist *reviewing this record* could disagree with Andrew that the trial court's mistaken admission of irrelevant evidence was so 'unduly prejudicial' as to render her trial 'fundamentally unfair.'" *Id.* at 95–96 (quoting *Payne*, 501 U.S. at 825) (emphasis added).

## II

This court again affirmed following the remand. There were essentially three steps the panel took to reach its bottom line. First, taking measure of the

5

record, it concluded that only "ten testimonial passages" had been properly preserved for federal review, *Andrew IV*, 164 F.4th at 797–98. Second, parrying Andrew's other bases for reversal, the court also concluded that she had abandoned her cumulative error claim, *id.* at 793. Third, and in the coup de grâce, the court held that neither the guilt nor penalty phase of Andrew's trial were fundamentally unfair because of the overall strength of the evidence and the irrelevant, sex-based evidence did not pertain to a central jury question, *id.* at 801–02, 803–04.

## A

As to the scope of review following the Supreme Court's remand, the court held that it would not consider any of Andrew's challenged evidence beyond the "ten testimonial passages" Andrew specifically cited to the Oklahoma Court of Criminal Appeals in her briefs before that court. *Andrew IV*, 164 F.4th at 797–98. Neither the law nor the facts support that result.

Starting with the law, the Antiterrorism and Effective Death Penalty Act of 1996 constrains federal habeas relief for those in state custody to cases where a state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). As the text of the second clause would suggest, the touchstone for AEDPA is reasonableness. Applying that principle, the Supreme Court has said that the reasonability inquiry "focuses on what the state court knew and did" and so

6

the inquiry is confined to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–85 (2011); *see also Wellmon v. Colo. Dep't of Corr.*, 952 F.3d 1242, 1249 (10th Cir. 2020) (same). But so long as the state court was reasonably or actually on notice of the record evidence, we are free to consider the same record evidence. "[N]othing in *Pinholster* inherently limits this court's review to evidence that the state appellate court – as opposed to the state trial court – considered." *Jamerson v. Runnels*, 713 F.3d 1218, 1227 (9th Cir. 2013); *see also Higgins v. Cain*, 720 F.3d 255, 263 (5th Cir. 2013) (quoting *Jamerson*). As best I can tell, no federal court has so narrowly confined federal habeas review to the specific record citations found in the briefs before the state court.

On the facts, the panel held "the Oklahoma Court of Criminal Appeals didn't act unreasonably by disregarding evidence that Ms. Andrew hadn't addressed." *Andrew IV*, 164 F.4th at 798. But at least with respect to the penalty phase, the Oklahoma court did not disregard any evidence. To the contrary, it was required under its own rules to review, and in fact *did* review, "the entire record" to "find that the sentence of death was not imposed because of any arbitrary factor, passion, or prejudice." *Andrew I*, 164 P.3d at 205. Under these circumstances, it was entirely within our power to consider the entire record as well. Instead, we may have now split with both the Fifth and Ninth Circuits and did so without the benefit of a district court decision on this point.

7

**B**

On remand, the panel also declined to consider Andrew's closely related claim of cumulative error. *Andrew IV*, 164 F.4th at 793. To be sure, "the parties' arguments on remand constrain our review." *Id.* But although the court exercised its discretion to invite briefing from parties after *Andrew III*, it did not place the parties on notice that the failure to re-brief or to address a previously briefed and argued issue would constitute abandonment. Rather, it ordered the parties to address in simultaneous briefs "the impact, on the course of further proceedings in this appeal, of the Supreme Court's" *Andrew III* decision. Doc. 193. Andrew did precisely that, addressing the issue upon which the Supreme Court granted certiorari, vacated, and remanded to this court. Doc. 197. She cannot now be faulted for failing to address an issue that the Supreme Court did not consider, for it was not part of its "impact." Doc. 193.

Nor does the mandate rule, a more apt justification for the panel's winnowing paradigm, appear to lead to the same result. "A lower court is 'bound to carry the mandate of the upper court into execution and [cannot] consider the questions which the mandate laid at rest.'" *Estate of Cummings ex rel. Montoya v. Cmty. Health Sys. Inc.*, 881 F.3d 793, 801 (10th Cir. 2018) (alteration in original) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). But for a previously raised issue to be precluded from consideration by the mandate rule, a party must have failed to have raised or

8

pursued it on appeal. *Id.* Here, Andrew did raise her cumulative error argument before the Supreme Court, but that court simply did not grant certiorari on that issue. Petition for Writ of Certiorari at 29–34, *Andrew III*, No. 23-6573, 2024 WL 5378840 (U.S. Jan. 22, 2024). Whether the cumulative error argument was therefore left available for this court's consideration on remand is a tougher question in light of the unique posture in which the case returned to us – by a reasoned opinion granting certiorari, vacating the judgment, and remanding, rather than summary reversal. *Andrew III*, 604 U.S. at 96. Regardless, given the seriousness of this case and the fact that the panel did not rest its holding on the mandate rule, this court should grant rehearing en banc to also consider whether cumulative error was preserved for our review.

## C

Finally, my main concern is the panel's formulation of the constitutional standard for determining when irrelevant, prejudicial evidence so impedes the fundamental fairness of a criminal trial that a due process violation occurs. The premise upon which the panel decided this question was relatively undisputed; it agreed with the Oklahoma Court of Criminal Appeals "that much of the challenged evidence had been irrelevant to guilt or innocence." *Andrew IV*, 164 F.4th at 798. The panel concluded that Andrew's trial and sentencing were fundamentally fair because the challenged, irrelevant

9

evidence did not "concern the central jury issues," *id.* at 801, and the strength of the evidence of guilt and aggravation was overwhelming, *id.* at 799–800, 804. In my view, Andrews rightfully questions the correctness of that legal standard.

"There is a principle – not so much a rule of evidence as a presupposition involved in the very conception of a rational system of evidence . . . which forbids receiving anything irrelevant, not logically probative." James Bradley Thayer, A Preliminary Treatise on Evidence at the Common Law 264–65 (1898). Irrelevant evidence is inadmissible for a reason – it necessarily invites the jury to render a decision based on factors other than what is provided for by law. Fed. R. Evid. 402; *cf.* 1 McCormick On Evid. § 184 (9th ed.). And when that irrelevant evidence touches upon an issue of passion or prejudice, it can do much worse than procure a decision on merely other-than-permissible grounds; rather, it can induce decision-making on affirmatively prohibited grounds.

The Constitution does not permit imposing the death penalty on the defendant "by reason of [her] race, religion, wealth, social position, or class, [or sex,] or if it is imposed under a procedure that gives room for the play of such prejudices." *Furman v. Georgia*, 408 U.S. 238, 242 (1972) (Douglas, J., concurring). Thus, the law has long recognized that irrelevant evidence can be prejudicial precisely because it does *not* concern a central issue of fact and

10

therefore distracts the jury and invites it to render a decision based on inflamed passions, or a prohibited, rather than a permissible, basis. *See, e.g., Hanson v. Sherrod*, 797 F.3d 810, 840 (10th Cir. 2015); *Duvall v. Reynolds*, 139 F.3d 768, 794 (10th Cir. 1998); *Payne*, 501 U.S. at 832 (O'Connor, J., concurring) (suggesting that due process may be offended if a prosecutor's statement "inflame[d] the [jurors'] passions more than the facts of the crime"); Fed. R. Evid. 403 notes of advisory committee ("Unfair prejudice within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

To my mind, the panel's holding flips this around. Irrelevant evidence carries the risk of prejudice precisely because it *never* tracks the central jury issues at trial, and instead lures the jury away from its appropriate task: "the determination of truth." *Tehan v. United States ex rel. Schott*, 382 U.S. 406, 416 (1966). That risk of prejudice becomes constitutionally intolerable when, by its nature, the irrelevant evidence tempts the jury into judgment on a prohibited ground, such as race or sex. *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 265 (1989) (O'Connor, J., concurring).

Also, the panel's reliance and interpretation of *Buck v. Davis* was misplaced. 580 U.S. 100 (2017). There, the Court held that a single race-based statement by an expert witness was sufficient to infect the trial with fundamental unfairness because, among other things, it "coincided precisely

11

with a particularly noxious strain of racial prejudice, which itself coincided precisely with the central question at sentencing." *Id.* at 121. But fairly read, *Buck* did not interpret the Due Process Clause to permit the introduction of irrelevant, prejudicial evidence so long as it is not targeted at a central jury question. That would make no sense. To the contrary, the Supreme Court sensibly held that even a quantitatively small amount of irrelevant, prejudicial evidence put before the jury can be unconstitutional when its quality – its source, its place within the broader trial, and the "unusual confluence" of other factors – supports such a conclusion. *Id.* "Some toxins can be deadly in small doses." *Id.* at 122. Here, by contrast to *Buck*, the trial record is suffuse with sex-stereotyping evidence, so this part of the holding in *Buck* was inapposite.[1]

What is more, this novel test invites substantial confusion about the scope of its holding. The panel appeared to hold that some of the challenged evidence could bear on central jury questions like demeanor or motive, so

---

[1] Nor can Andrew be fairly blamed for this misapprehension of *Buck*. Andrew never cited *Buck* in her principal briefs. Indeed, she could not have, because as Oklahoma helpfully points out, *Buck* was decided after Andrew's opening brief was first filed in this case. Resp. to Pet. for Rehearing at 18. Nor did Andrew make *Buck* the centerpiece of her supplemental brief after remand from *Andrew III*, where she cited it only twice. Aplt. Supp. Br. at 3. She relied instead on *Payne*, as she had before the Supreme Court and this court, and cited *Buck* only for the proposition that even a small quantum of irrelevant evidence can be prejudicial when it aligns with a prohibited ground for decision.

12

Andrew's challenge to that evidence failed. *Andrew IV*, 164 F.4th at 799. But if this is correct, why hasn't Andrew demonstrated that the sex-stereotyping evidence coincided precisely with a central jury question? How can Andrew's claim fail simultaneously because some of the evidence is too relevant to a central jury question, and the remaining evidence is not relevant enough? And it is questionable that the jury would have isolated some of the sex-stereotyping evidence, appropriately considered it only for its relevance as to motive, and disregarded the remainder.

Also, two points about the strength of the evidence against Andrew. First, in determining whether the irrelevant evidence is prejudicial for constitutional purposes, the Supreme Court did not intend for this court to ask simply whether, in a counterfactual world where the irrelevant evidence had not been admitted, the result would have been the same. Instead, the analysis asks whether the irrelevant evidence distracted the jury from its appropriate task and tempted it into an inappropriate one, such that no fair-minded jurist could have confidence that the jury *actually* rendered its decisions based only on admissible, relevant evidence.

Second, with respect to the penalty phase of Andrew's trial, the panel held that there was "strong evidentiary support for [two] aggravating factors," *Andrew IV*, 164 F.4th at 804. Maybe so. But an Oklahoma capital jury does not merely consider whether the state has proven an aggravating factor, it must

13

weigh that against mitigating factors as well, *Eddings v. Oklahoma*, 455 U.S. 104, 110–12 (1982); *see also* Okla. Stat. tit. 21 § 701.11 ("[I]f it is found that any such aggravating circumstance is outweighed by the finding of one or more mitigating circumstances, the death penalty shall not be imposed."). Oklahoma's strategy of flooding the decision-making zone with irrelevant, prejudicial sex-stereotyping evidence may have undermined the jury's ability to properly weigh any mitigating factors in Andrew's favor. The panel opinion does not discuss this required balancing and may have over-emphasized the aggravating evidence alone.

## III

In a classic evidence law case, the New Hampshire Chief Justice explained: "It is quite inconsistent with that fairness of trial to which every man [and woman] is entitled, that the jury should be prejudiced against him [or her] by any evidence except what relates to the issue; above all should it not be permitted to blacken his [or her] character, to show that he [or she] is worthless, to lighten the sense of responsibility which rests upon the jury, by showing that he [or she] is not worthy of painstaking and care, and, in short, that the trial is what the chemists and anatomists call *experimentum in corpore vili*." *State v. Lapage*, 57 N.H. 245, 289–90 (1876); *see also* 1 John Henry Wigmore, Treatise on the Anglo-American System of Evidence in Trials at Common Law Including the Statutes and Judicial Decisions of All

14

Jurisdictions of the United States and Canada § 12 (2d ed. 1923). The trial record here demonstrates not only that this likely occurred in this trial, but that it was Oklahoma's trial objective for it to occur. It thus strikes me as among those "extreme malfunctions in the state criminal justice system" we are charged to guard against. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)).

In failing to correct this error, I fear we have compounded it. As binding precedent, the due process holding of this case will govern a wide range of claims that recur in federal and state courts. In Andrew's case, there is a real risk that the death penalty will be carried out based on a replete record of inadmissible sex-stereotyping evidence and argument. I respectfully dissent.

15